

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 14, 2020**

**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WATERS RETAIL TPA, LLC**, *et al.*,[1] | § | **Case No. 20-30644-sgh-11** |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING
### SECOND AMENDED JOINT PLAN OF LIQUIDATION OF
### MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC

Came on for consideration confirmation of the *Second Amended Joint Plan of Liquidation of MQ Pretty Pond, LLC and MQ Coco Plum, LLC* (as may be further amended modified, or supplemented from time to time, the "Plan") [Docket No. 148] filed by MQ Pretty

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the Order Directing Joint Administration of Chapter 11 Cases [Docket No. 61]. The Debtors' mailing address is 4622 Maple Ave., Ste. 200, Dallas, Texas 75219.

Pond, LLC ("Pretty Pond") and MQ Coco Plum, LLC ("Coco Plum") (collectively, the "Debtors"), debtors and debtors-in-possession in the above-referenced cases (the "Cases"); and the Court having entered an Order, among other things, approving the *First Amended Disclosure Statement in Support of MQ Pretty Pond, LLC and MQ Coco Plum, LLC's First Amended Joint Plan of Liquidation* (the "Disclosure Statement") and approving certain procedures for the sale of substantially all of the Debtors' Assets to third parties as well as the solicitation and tabulation of votes for the Plan (the "Disclosure Statement Order") [Docket No. 126]; and upon certification of Seth Sloan, the balloting agent in the Cases; and the Court having reviewed the certification filed certifying the ballots accepting and rejecting the Plan; and the Court having held the hearing to confirm the Plan on October 5, 2020 (the "Confirmation Hearing") after due notice to holders of Claims and Interests and other parties in interest in accordance with the Disclosure Statement, the Disclosure Statement Order, Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"); and the Court having reviewed all documents in connection with confirmation of the Plan and having heard all parties desiring to be heard at the Confirmation Hearing; and upon the record compiled in these Cases; and after due deliberation and consideration of all the foregoing; and sufficient cause appearing therefore; the Court hereby makes the following findings of fact and conclusion of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THE COURT FINDS AND CONCLUDES THAT:**

     A.    Capitalized Terms. Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

B.     <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of facts constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     <u>Jurisdiction, Venue, Core Proceeding</u>. This Court has jurisdiction over these Cases pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

D.     <u>Disclosure Statement</u>. On August 25, 2020 the Debtors filed their Disclosure Statement [Docket No. 123], which put parties on notice that the Debtors would seek authority in connection with confirmation of the Plan to sell substantially all of the assets of the Debtors to third parties ("<u>Sale</u>").

E.     <u>Sale of Debtors' Properties</u>. The Disclosure Statement and Plan provides for the purchase and sale of each Debtor's Property.

a.     <u>Contract to Purchase Pretty Pond Property</u>.[2] The Disclosure Statement included a copy of the Pretty Pond and WLN Zephyrhills, LLC, a Florida limited liability company (as successor to WLN Zephyrhills, LLC, a Georgia limited liability company) ("<u>Zephyrhills</u>" or the "<u>Pretty Pond Buyer</u>") Purchase and Sale Agreement ("<u>Pretty Pond PSA</u>").

b.     <u>Auction and Sale of Coco Plum Property</u>. The Disclosure Statement provided that the best way to maximize value for the benefit of all parties was to conduct

---

[2] Any defined terms not defined herein shall have the meanings ascribed to them in the Plan.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 3 of 37**

an auction and sales process for the Coco Plum Property. Konover Acquisitions Corp. ("Konover") amended its pre-petition contract to purchase the Coco Plum Property and a Purchase and Sale Agreement with Konover as the Stalking Horse Bidder was negotiated and executed. On July 10, 2020, Coco Plum filed its *Expedited Motion of MQ Coco Plum, LLC Only for Order Approving Bidding Procedures, Break-Up Fee, and Other Protections in Advance of Auction and Granting Related Relie*f (the "Bid Procedures Motion") [Docket No. 79]. The Court granted the Bid Procedures Motion on July 21, 2020 (the "Bid Procedures Order") [Docket No. 90]. Coco Plum conducted an auction on August 21, 2020 pursuant to the Bid Procedures Order.

      c.    Successful Bidder. Coco Plum filed a *Notice of Successful Bidder and Back-Up Bidder* [Docket No. 119] and disclosed that KIC Real Estate Services, LLC ("KIC" or the "Coco Plum Buyer") was the successful bidder at the auction and Konover was the successful back-up bidder. KIC submitted a winning bid of $3,210,204.08 that was conditioned on its purchase of the Coco Plum Property free and clear of any and all liens, claims, encumbrances, and other interests. Coco Plum and KIC subsequently entered into a purchase and sale agreement for the Coco Plum Property (the "Coco Plum PSA").

      F.    Compliance with the Bid Procedures. Coco Plum and the Coco Plum Buyer complied with the Bid Procedures in all respects.

      G.    Implementation of the Sale. The Plan implements the sale of the Pretty Pond and Coco Plum Properties to the Coco Plum Buyer and the Pretty Pond Buyer (collectively the "Buyers") and the receipt of the Coco Plum Proceeds and Pretty Pond Proceeds, as applicable, shall fund the Plan payments for each respective Case.

H. <u>Disclosure Statement Order</u>. On August 27, 2020, the Court entered an order approving the Disclosure Statement [Docket No. 126] in accordance with Section 105(d)(2)(vi) of the Bankruptcy Code (the "<u>Disclosure Statement Order</u>"), and establishing deadlines for the solicitation of votes for the confirmation of the Plan.

I. <u>Adequacy of the Disclosure Statement</u>. The information contained in the Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code Section 1125 and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. The Debtors' use of the Disclosure statement to solicit votes to accept or reject the Plan was authorized by the Disclosure Statement Order and was appropriate. Solicitation of votes on the Plan was in compliance with the Disclosure Statement Order.

J. <u>Solicitation</u>. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

K. <u>Voting</u>. As set forth in the record at the Confirmation Hearing, and by certification of Seth Sloan, each class of Claims and Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)), is not impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)), or the Plan does not discriminate unfairly and is fair and equitable with respect to such class of Claims and/or Interests (11 U.S.C. § 1129(b)(1)). The Plan has been accepted by Creditors that hold at least

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 5 of 37**

two-thirds in amount and more than one-half in number of the Allowed Claims and Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8). Voting on the Plan and treatment thereunder are reflected on the Declaration of Seth Sloan Regarding the Tabulation of Ballots Accepting or Rejecting the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation filed by the Debtors on October 2, 2020 (the "Sloan Declaration") [Docket No. 140]. The procedure by which ballots were received and tabulated was fair, properly conducted, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules, the Disclosure Statement and the Disclosure Statement Order.

L. Modifications to the Plan. The modifications and amendments in the Plan set forth on the record at the Confirmation Hearing, or made by this Confirmation Order, do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code, or re-solicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims not accepting such modifications be afforded an opportunity to change previously cast acceptances or rejection of the Plan. Disclosure of the modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Cases. Accordingly, pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

M. Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents of the Plan. The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 6 of 37**

Any discharge, release, injunction and exculpation provisions of the Plan are set forth in specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

N. <u>Liquidating Trustee</u>. On September 23, 2020, the Debtors filed their *Notice of Filing of Liquidating Trust Agreement* [Docket No. 136] which attached a draft version of the Liquidating Trust Agreement (the "<u>Trust Agreement</u>") along with the curriculum vitae for the proposed Liquidating Trustee pursuant to section 6.2 of the Plan and the Disclosure Statement. On October 9, 2020, the Debtors filed their *Notice of Amended Liquidating Trust Agreements* [Docket No. ___] which attached the Pretty Pond Trust Agreement and the Consolidated Trust Agreements, incorporating the Court's comments from the Confirmation Hearing. On the Effective Date, the Liquidating Trustee shall be appointed for both the Pretty Pond Liquidating Trust and the Consolidated Liquidating Trust.

O. <u>Compliance with Bankruptcy Code Section 1129(a)(1)</u>. The Plan complies with any and all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, thereby satisfying Section 1129(a)(1). The Court makes further findings below that the Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The omission or exclusion of a specific finding herein does not constitute a finding that the Debtors have not complied with any and all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

P. <u>Proper Classification Under Sections 1122 and 1123(a)(1).</u> In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates six (6) Classes of Claims (Classes 1.1.A, 1.2.A, 2.1.A, 2.2.A, 2.3.A, 3.A) for Pretty Pond and five (5) Classes of Claims, (Classes 1.2.B, 2.1.B, 2.2.B, 2.3.B, 3.B) for Coco Plum. The Claims placed in each Class are substantially similar to other Claims in each such Class, and

such classification is therefore consistent with Bankruptcy Code Section 1122. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes and the Plan's treatment thereof do not unfairly discriminate between holders in each Class of Claims. The Plan satisfies Bankruptcy Code Sections 1122 and 1123(a)(1).

Q.     Specification of Classes Not Impaired under the Plan Under Section 1123(a)(2). Article 3 of the Plan specifies each particular Class of Claims or Interest that is not impaired under the Plan. The Plan satisfies Bankruptcy Code Section 1123(a)(2).

R.     Specified Treatment of Impaired Classes – Section 1123(a)(3). Article 5 of the Plan specifies the treatment of the impaired Classes of Claims thereby satisfying Bankruptcy Code Section 1123(a)(3).

S.     No Discrimination – Section 1123(a)(4). The Plan either provides the same treatment for each Claim in each respective Class or the holder of a particular Claim or Interest has agreed to a less favorable treatment of its particular Claim or Interest, thereby satisfying Bankruptcy Code Section 1123(a)(4).

T.     Implementation of the Plan – Section 1123(a)(5). Article 6 of the Plan provides adequate and proper means for implementing the Plan. Article 6 establishes the procedures for the sale of each Debtor's Property to the Buyers. Article 6 also sets forth the establishment of the Liquidating Trusts upon the Effective Date. The Liquidating Trustee will be authorized to pursue any and all Causes of Action on behalf of the respective Debtors and their Estates, including Chapter 5 Causes of Action.

U.     Charters of the Debtors – Section 1123(a)(6). The Plan is a liquidating plan. Article 5 of the Plan specifies the treatment of Equity Interest Holders. Equity holders shall only

receive distributions under the Plan to the extent that all senior claims have been paid in full. To the extent that it is applicable, Bankruptcy Code Section 1123(a)(6) is satisfied.

V.      Selection of Officers and Directors – Section 1123(a)(7). The Plan as a liquidation plan provides for the designation of a Liquidating Trustee to liquidate remaining assets, make distribution to creditors, and wind up the Debtors' businesses. The Court finds the designation of a Liquidating Trustee consistent with the interests of holders of Claims or Interests against the Debtors.

W.      Additional Plan Provisions – Section 1123(b). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

X.      Compliance with Bankruptcy Code Section 1129(a)(2). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code Section 1129(a)(2). Specifically, the Debtors offered the testimony of Russell Perry, the "Independent Director," stating that the Plan complies with all applicable provisions of the Bankruptcy Code.

Y.      Plan Proposed in Good Faith – Section 1129(a)(3). The Debtors have proposed the Plan in good faith and not by means forbidden by law, thereby satisfying Bankruptcy Code Section 1129(a)(3). The Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' assets in a fashion to maximize the recovery to the Debtors' creditors in accordance with the priorities set forth in the Bankruptcy Code.

Z.      Payment for Services or Costs and Expenses – Section 1129(a)(4). Any payments made or to be made by the Debtors for services or for costs and expenses in connection with

these Cases have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code Section 1129(a)(4).

AA. <u>Identification of Directors, Officers, and Insiders – Section 1129(a)(5)</u>. The Plan proposes the appointment of the Liquidating Trustee. The identity of the proposed Liquidating Trustee was made known by the Debtors on September 23, 2020 [Docket No. 136]. The Plan does not propose the retention or employment of an insider of the Debtors. Therefore, Bankruptcy Code Section 1129(a)(5) has been satisfied.

BB. <u>No Rate Changes – Section 1129(a)(6)</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, Bankruptcy Code Section 1129(a)(6) is inapplicable.

CC. <u>Best Interest of Creditors – Section 1129(a)(7)</u>. As set forth in the Liquidation Analysis and by evidence presented at the Confirmation Hearing, the "best interest" test is satisfied as to all Impaired Classes of Claims and Interests that have not accepted the Plan. As set forth in the Liquidation Analysis, a liquidation under Chapter 7 would adversely affect the ultimate proceeds available for distribution to holders of the Secured Claims due to: (i) increased costs, including administrative fees and costs payable to the chapter 7 trustee and professional advisors of the trustee; (ii) the potential loss of the contract to sell the Property, which required such Sale to be through a plan to avoid documentary/stamp taxes that would be payable in a chapter 7 liquidation; (iii) the need to retain additional professionals to market the Property; (iv) loss of value through passage of time; and (v) limitations of Section 721 of the Bankruptcy Code. Confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a Chapter 7 liquidation of the Debtors' assets.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 10 of 37**

DD. <u>Acceptance by Impaired Classes– Section 1129(a)(8)/1129(b)(1)</u>. Each class of Claims and Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)), is not impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)), or the Plan does not discriminate unfairly and is fair and equitable with respect to such class of Claims and/or Interests (11 U.S.C. § 1129(b)(1)). The Plan has been accepted by Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims and Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8).

EE. <u>Treatment of Administrative, Other Priority Claims and Priority Tax Claims – Section 1129(a)(9)</u>. Consistent with Section 1129(a)(9)(A), Article 4 of the Plan provides that each holder of an Allowed Administrative Expense Claim shall be paid the total amount of such holder's Allowed Administrative Expense Claim as soon as reasonably practicable after the later of (a) the Effective Date, (b) payment in full of the DIP Administrative Claim, (c) the allowance of such Administrative Expense Claim, and (d) such other date agreed upon in writing by the applicable Debtor or the Liquidating Debtor and the holder of such Allowed Administrative Expense Claim. Notwithstanding the forgoing, Allowed Professional Claims shall be paid pursuant to Article 4 of the Plan. Consistent with Section 1129(a)(9)(C), Article 4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive all Distributions under the Plan after the payment of the DIP Administrative Claim until such time as Allowed Priority Tax Claims are paid in full. No holder of an Allowed Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim has objected to this treatment under the Plan and if they have, such objections have been withdrawn.

FF. <u>Acceptance by Impaired Class – Section 1129(a)(10)</u>. At least one Class of Claims for each Debtor that is impaired under the Plan has accepted the Plan thereby satisfying Bankruptcy Code Section 1129(a)(10).

GG. <u>Feasibility – Section 1129(a)(11)</u>. The Plan is a liquidating plan and the funding of which is dependent upon the successful liquidation of the Debtors' assets, and thus the feasibility requirement of Bankruptcy Code Section 1129(a)(11) is satisfied.

HH. <u>Payment of Fees – Section 1129(a)(12)</u>. All fees payable under 28 U.S.C. §1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to the Plan thus satisfying the requirements of Bankruptcy Code Section 1129(a)(12).

II. <u>Continuation of Retiree Benefits – Section 1129(a)(13)</u>. The Debtors do not have any retiree benefits to be continued under the Plan. Thus, Bankruptcy Code Section 1129(a)(13) is not applicable.

JJ. <u>Domestic Support – Section 1129(a)(14)</u>. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Thus, Bankruptcy Code Section 1129(a)(14) is not applicable.

KK. <u>Individual Debtor Cases – Section 1129(a)(15)</u>. The Debtors are not individual debtors and thus Bankruptcy Code Section 1129(a)(15) is not applicable.

LL. <u>Transfers of Property – Section 1129(a)(16)</u>. All transfers of property under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Thus Bankruptcy Code Section 1129(a)(16) is satisfied.

MM.  <u>Only Plan - Section 1129(c)</u>. The Plan is the only plan that has been filed in these Cases and it has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

NN.  <u>Not for Tax Avoidance - Section 1129(d)</u>. No party in interest has requested that the Court deny Confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

OO.  <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements of confirmation set forth in Bankruptcy Code Section 1129.

PP.  <u>Implementation of the Plan</u>. Article 6 of the Plan provides the means for implementing the Plan. The provisions of Article 6 of the Plan are consistent with and permissible under Section 1123(a)(5) of the Bankruptcy Code and are consistent with the interests of Creditors, holders of Interest, and public policy.

QQ.  <u>Preservation of Causes of Action</u>. The claims and Causes of Action referenced or listed in the Plan, the Disclosure Statement, and Article 3, Section G "Retention of Causes of Action" of the Disclosure Statement are hereby specifically and unequivocally reserved and retained for the prosecution, enforcement, and pursuit by the Debtors and the Liquidating Trustee, who is designated as the representative of the Liquidating Debtors' Estates for such purposes, pursuant to Section 1123(b)(3)(B).

RR.  <u>Releases, Exculpations, and Injunctions.</u> Any releases, exculpations, and injunctions provided in the Plan (a) are within the jurisdiction of the Court under 28 U.S.C. §

1334; (b) are the product of good faith, arm's-length negotiations, (c) are integral elements of the global settlement embodied in the Plan and are essential to the Plan's implementation, (d) confer material benefit on, and are in the best interests of the Debtors, their Estates and Creditors; and (e) are consistent with Sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

SS.   Sale of Pretty Pond Property (as defined in the Pretty Pond APA).

a.   The Plan is to be implemented by the sale of the Pretty Pond Property to the Pretty Pond Buyer. Certain Plan payments are to be funded from the cash of the Pretty Pond Proceeds.

b.   The Pretty Pond APA was negotiated and entered into in good faith, without collusion and at arm's length. The Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby.

c.   Neither Pretty Pond nor the Pretty Pond Buyer has engaged in conduct that would cause or permit the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

d.   The Pretty Pond Buyer is not a successor in interest or alter ego of Pretty Pond and should not have any successor or transferee liability for any obligations or liabilities of Pretty Pond as a result of the purchase of the Pretty Pond Property.

e.   Upon entry of this Confirmation Order, the Pretty Pond APA is a legal, valid and binding contract between Pretty Pond and the Pretty Pond Buyer and is enforceable according to its terms. All terms of the Pretty Pond APA, specifically including, without limitation, the purchase price to be paid by the Pretty Pond Buyer thereunder, are: (i) fair and reasonable, (ii) represent the highest and best offer for the purchase of the Pretty Pond Property, (iii) will provide the best prices obtainable for the Pretty Pond Property and assumed liabilities as identified in the Pretty Pond APA and a greater recovery for the Estate's creditors than would be provided by any other practical available alternative, and (iv) constitute reasonably equivalent and fair consideration for the sale of the Pretty Pond Property and assumed liabilities as identified in the Pretty Pond APA.

f.   As of the Closing Date, the consummation of the Sale and the other transactions contemplated by the Pretty Pond APA will be legal, valid and property authorized under all applicable provisions of the Bankruptcy Code, including Sections 105(a), 363(b), 363(f), 363(m), 365(a), 365(b), and 365(f), 1123 and/or 1129, and all of the applicable requirements of such sections have been complied with.

g.   Pretty Pond has articulated sound business reasons for entering into the Pretty Pond APA and for selling the Pretty Pond Property on the terms and conditions set forth in the Pretty Pond APA, and it is a reasonable exercise of Pretty Pond's business judgment to execute, deliver, and consummate the transactions contemplated by the Pretty Pond APA. Pretty Pond may sell the Pretty Pond Property to the Pretty Pond Buyer free and clear of all liens, claims, and encumbrances, with all such liens claims, and encumbrances to attach to the Pretty Pond Proceeds and to be satisfied from the Pretty Pond Proceeds as set forth in Section 6 of the Plan.

TT.   <u>Sale of Coco Plum Property (as defined in the Coco Plum APA).</u>

a.   The Plan is to be implemented by the sale of the Coco Plum Property to the Coco Plum Buyer. Certain Plan payments are to be funded from the Coco Plum Proceeds.

b.   The Coco Plum APA was negotiated and entered into in good faith, without collusion, and at arm's length. The Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby.

c.   Neither Coco Plum nor the Coco Plum Buyer has engaged in conduct that would cause or permit the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

d.   The Coco Plum Buyer is not a successor in interest or alter ego of Coco Plum and should not have any successor or transferee liability for any obligations or liabilities of Coco Plum as a result of the purchase of the Coco Plum Property.

e.   Upon entry of this Confirmation Order, the Coco Plum APA is a legal, valid and binding contract between Coco Plum and the Coco Plum Buyer and is enforceable according to its terms. All terms of the Coco Plum APA, specifically including, without limitation, the purchase price to be paid by the Coco Plum Buyer thereunder, are: (i) fair and reasonable, (ii) represent the highest and best offer for the purchase of the Coco Plum Property, (iii) will provide the best prices obtainable for the Coco Plum Property and assumed liabilities as identified in the Coco Plum APA and a greater recovery for the estate's creditors than would be provided by any other practical available alternative, and (iv) constitute reasonably equivalent and fair consideration for the sale of the Coco Plum Property and assumed liabilities as identified in the Coco Plum APA.

f.   As of the closing date, the consummation of the Sale and the other transactions contemplated by the Coco Plum APA will be legal, valid and property authorized under all applicable provisions of the Bankruptcy Code, including Sections

105(a), 363(b), 363(f), 363(m), 365(a), 365(b), and 365(f), 1123 and/or 1129, and all of the applicable requirements of such sections have been complied with.

g.     Coco Plum has articulated sound business reasons for entering into the Coco Plum APA and for selling the Coco Plum Property on the terms and conditions set forth in the Coco Plum APA, and it is a reasonable exercise of Coco Plum's business judgment to execute, deliver, and consummate the transactions contemplated by the Coco Plum APA. Coco Plum may sell the Coco Plum Property to the Coco Plum Buyer free and clear of all liens, claims, and encumbrances, with all such liens claims, and encumbrances to attach to the Coco Plum Proceeds and to be satisfied from the Coco Plum Proceeds as set forth in Section 6 of the Plan.

UU.    Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including, but not limited to, any instrument executed in furtherance of the transactions contemplated by the Plan, including any deeds or conveyance documents executed pursuant to the Coco Plum APA and the Pretty Pond APA) shall be exempt and shall not be subject to tax under any law imposing sale tax or similar tax, in each case to the fullest extend provided by Section 1146 of the Bankruptcy Code and pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct any applicable government entity to record any recordable document executed in connection with the consummation of the Plan, without the payment of such taxes.

VV.    <u>Objections</u>. All timely filed objections to confirmation of the Plan were withdrawn, settled, or overruled.

## **<u>DECREES</u>**

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1.    <u>Confirmation of the Plan.</u> The Plan, which consists of the Plan and modifications set forth in this Confirmation Order or on the record at the Confirmation Hearing, is **APPROVED** and **CONFIRMED** under Bankruptcy Code Section 1129 in its entirety. The

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 16 of 37**

terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.          Objections. No objections were filed to confirmation of the Plan.

3.          Approval of Plan Modifications. The modifications and amendments in the Plan made by this Confirmation Order are hereby approved. Such modifications do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code, or re-solicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims not accepting such modifications be afforded an opportunity to change previously cast acceptances or rejection of the Plan. Disclosure of the modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Cases.

4.          Vesting of Pretty Pond Property.

a.          The Pretty Pond APA is approved, and Pretty Pond is authorized and directed to sell the Pretty Pond Property to the Pretty Pond Buyer and otherwise consummate the transactions contemplated by the Pretty Pond APA.  Except as otherwise provided in the Pretty Pond APA and this Confirmation Order, upon the Closing, the Pretty Pond Property as set forth in the Pretty Pond APA shall vest in Pretty Pond Buyer free and clear of all liens, claims, encumbrances, or other interests claimed or held by any party (other than the Pretty Pond Buyer) in accordance with Sections 363(f), 365, and/or 1123 and 1129 of the Bankruptcy Code, including, without limitation, the liens of Christian Robin pursuant to a Mortgage filed as Book 9082, Page 1365, and Pasco

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 17 of 37**

County Solid Waste pursuant to Notices of Lien filed as Book 9621, Page 1369, Book 9621, Page 1370, Book 9621, Page 1371, and Book 9621, Page 1372, all in the real property records of Pasco County, Florida, as well as the liens for 2017, 2018, and 2019 ad valorem property taxes of Pasco County, Florida and/or FCAP as Custodian for FTCFIMT, LLC, Citrus Capital Holdings FBO Sec Pty, and Assembly Tax 36 LLC Care of Custodian and Secured Party, pursuant to Tax Certificates 1701376, 1701377, 1701378, 1801317, 1801318, 1801319, 1901362, 1901363, and 1901364, which liens, claims, encumbrances, or other interests will attach to the Pretty Pond Proceeds with the same validity, priority, force and effect and subject to the same defenses as existed prior to the Closing Date. On the Closing Date, any and all pre-existing liens, claims, and encumbrances or other matters affecting title to the Pretty Pond Property shall be deemed extinguished as of such date, with such liens and claims to attach to Pretty Pond Proceeds as provided in the Plan and herein. Without limiting the generality of the foregoing, all liens, encumbrances and claims against the Pretty Pond Property as of the Closing Date shall be unconditionally and irrevocably released, discharged and terminated as to the Pretty Pond Property by the Pretty Pond Buyer under the Pretty Pond APA.

b.      The Pretty Pond Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby. In the absence of a stay pending appeal of this Order, if all or any of the provisions of this Order are hereafter reversed or modified on appeal, such reversal or modification shall not affect the validity and enforceability of any sale, transfer or assignment authorized by this Order, specifically including, the Sale of the Pretty Pond Property to the Pretty Pond Buyer under the Pretty Pond APA, and notwithstanding any

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 18 of 37**

reversal or modification on appeal, any sale transfer, or assignment, specifically including the Sale of the Pretty Pond Property to the Pretty Pond Buyer under the Pretty Pond APA, shall be governed in all respects by the original provisions of this Order.

c.      Neither Pretty Pond nor the Pretty Pond Buyer has engaged in conduct that would cause or permit the Pretty Pond APA or the Sale of the Pretty Pond Property to the Pretty Pond Buyer thereunder to be avoided under Section 363(n) of the Bankruptcy Code. The Pretty Pond Buyer is not a successor in interest or alter ego of Pretty Pond and shall not have any successor or transferee liability for any obligations or liabilities of Pretty Pond as a result of the purchase of the Pretty Pond Property.

d.      Effective upon the Closing of the Sale of the Pretty Pond Property to the Pretty Pond Buyer under the Pretty Pond APA, all holders of liens, encumbrances and other claims are hereby barred and permanently enjoined from in any way asserting or pursuing such liens, encumbrances and other claims against the Pretty Pond Buyer, the Pretty Pond Buyer's successors or assigns, the Pretty Pond Property or its successors and assigns. Following the Closing of the Sale of the Pretty Pond Property to the Pretty Pond Buyer under the Pretty Pond APA, no holder of any liens, encumbrances and other claims shall in any way interfere with the Pretty Pond Buyer's possession of, title to, or use and enjoyment of the Pretty Pond Property. The Pretty Pond Buyer shall have no liability or responsibility of any nature, character or kind for any liability or other obligation of Pretty Pond or any other party relating to the Pretty Pond Property or the operation of Pretty Pond's business.

e.      The provision of this Order authorizing the Sale of the Pretty Pond Property free and clear of liens, encumbrances and claims shall be self-executing, and

neither Pretty Pond nor the Pretty Pond Buyer nor any other party shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate and/or implement the provisions of this Order; provided, however, that this paragraph shall not excuse any party from performing any of its respective obligations under the Pretty Pond APA. Without in any way limiting the foregoing, Pretty Pond and the Pretty Pond Buyer are authorized and empowered to execute and file releases, termination statements, assignments, consents, or other instruments to effectuate and/or implement the provisions of this Order. Without limiting any other terms and provisions of this Order, upon the request of either Pretty Pond or the Pretty Pond Buyer, the former holders of any liens, encumbrances and other claims held against the Pretty Pond Property prior to Closing (as such liens, encumbrances and other claims were automatically, unconditionally and irrevocably released, discharged and terminated as to the Pretty Pond Property upon the Closing Date by this Order and attached exclusively to the Pretty Pond Proceeds from the Pretty Pond Property) shall execute and deliver to the Pretty Pond and the Pretty Pond Buyer a written, notarized release of lien, claim or other encumbrance against the Pretty Pond Property, in form and satisfaction to be determined in the commercially reasonable discretion of Pretty Pond and/or the Pretty Pond Buyer (whomever the requesting party), as a condition to payment of any Allowed Claim held by such creditor. Any and all of such release documents may be recorded with any governmental agency by Pretty Pond or the Pretty Pond Buyer to evidence the liens, claims, and encumbrances released thereby.

5. <u>Vesting of Coco Plum Assets</u>.

a. The Coco Plum APA is approved, and Coco Plum is authorized and directed to sell the Coco Plum Property to the Coco Plum Buyer and otherwise consummate the transactions contemplated by the Coco Plum APA. Except as otherwise provided in the Coco Plum APA and this Confirmation Order, upon the Closing, the Coco Plum Property as set forth in the Coco Plum APA shall vest in Coco Plum Buyer free and clear of all liens, claims, encumbrances, and interests claimed or held by any party (other than the Coco Plum Buyer) in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code, which liens, claims, encumbrances, and interests will attach to the Coco Plum Proceeds with the same validity, priority, force and effect and subject to the same defenses as existed prior to the Closing Date. On the Closing Date, any and all pre-existing liens, claims, and encumbrances or other matters affecting title to the Coco Plum Property shall be deemed extinguished as of such date, with such liens and claims to attached to Coco Plum Proceeds as provided in the Plan and herein. Without limiting the generality of the foregoing, all liens, encumbrances and claims against the Coco Plum Property as of the Closing Date shall be unconditionally and irrevocably released, discharged and terminated as to the Coco Plum Property by the Coco Plum Buyer under the Coco Plum APA.

b. The Coco Plum Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby. In the absence of a stay pending appeal of this Order, if all or any of the provisions of this Order are hereafter reversed or modified on appeal, such reversal or modification shall not affect the validity and enforceability of any sale, transfer or assignment authorized by this Order, specifically including, the Sale of the Coco Plum

Property to the Coco Plum Buyer under the Coco Plum APA, and notwithstanding any reversal or modification on appeal, any sale transfer, or assignment, specifically including the Sale of the Coco Plum Property to the Coco Plum Buyer under the Coco Plum APA, shall be governed in all respects by the original provisions of this Order.

c.      Neither Coco Plum nor the Coco Plum Buyer has engaged in conduct that would cause or permit the Coco Plum APA or the sale of the Coco Plum Property to the Coco Plum Buyer thereunder to be avoided under Section 363(n) of the Bankruptcy Code.  The Coco Plum Buyer is not a successor in interest or alter ego of Coco Plum and shall not have any successor or transferee liability for any obligations or liabilities of Coco Plum as a result of the purchase of the Coco Plum Property.

d.      Effective upon the Closing of the Sale of the Coco Plum Property to the Coco Plum Buyer under the Coco Plum APA, all holders of liens, encumbrances and other claims are hereby barred and permanently enjoined from in any way asserting or pursuing such liens, encumbrances and other claims against the Coco Plum Buyer, the Coco Plum Buyer's successors or assigns, the Coco Plum Property and/or any other Property of the Coco Plum Buyer or its successors and assigns.  Following the closing of the sale of the Coco Plum Property to the Coco Plum Buyer under the Coco Plum APA, no holder of any liens, encumbrances and other claims shall in any way interfere with the Coco Plum Buyer's possession of, title to, or use and enjoyment of the Coco Plum Property.  The Coco Plum Buyer shall have no liability or responsibility of any nature, character or kind for any liability or other obligation of Coco Plum or any other party relating to the Coco Plum Property or the operation of Coco Plum's business.

e. The provision of this Order authorizing the Sale of the Coco Plum Property free and clear of liens, encumbrances and claims shall be self-executing, and neither Coco Plum nor the Coco Plum Buyer nor any other party shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate and/or implement the provisions of this Order; provided, however, that this paragraph shall not excuse any party from performing any of its respective obligations under the Coco Plum APA. Without in any way limiting the foregoing, Coco Plum and the Coco Plum Buyer are authorized and empowered to execute and file releases, termination statements, assignments, consents, or other instruments to effectuate and/or implement the provisions of this Order. Without limiting any other terms and provisions of this Order, upon the request of either Coco Plum or the Coco Plum Buyer, the former holders of any liens, encumbrances and other claims held against the Coco Plum Property prior to Closing (as such liens, encumbrances and other claims were automatically, unconditionally and irrevocably released, discharged and terminated as to the Coco Plum Property upon the Closing Date by this Order and attached exclusively to the Coco Plum Proceeds from the Coco Plum Property) shall execute and deliver to Coco Plum and the Coco Plum Buyer a written, notarized release of lien, claim or other encumbrance against the Coco Plum Property, in form and satisfaction to be determined in the commercially reasonable discretion of Coco Plum and/or the Coco Plum Buyer (whomever the requesting party), as a condition to payment of any Allowed Claim held by such creditor. Any and all of such release documents may be recorded with any governmental agency by Coco Plum or the Coco Plum Buyer to evidence the liens, claims, and encumbrances released thereby.

6.      This Confirmation Order, the Pretty Pond APA, the Coco Plum APA, and all related agreements and documents necessary to implement the Plan shall be binding upon, and shall inure to the benefit of any, Pretty Pond or Coco Plum and their estates, as applicable, their creditors, the Buyers, all third parties affected by this Confirmation Order (including but not limited to any third parties asserting liens, encumbrances, claims or other interests in or against the Pretty Pond Property and Coco Plum Property, as applicable) and the respective successors and assigns of such parties.    This Confirmation Order also shall be binding upon any subsequently appointed trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law and shall not be subject to rejection or avoidance by Pretty Pond, Coco Plum, their estates, their creditors or any trustee, examiner or receiver.

7.      <u>Transfer Taxes: Recording and Filing Department</u>.

a.      Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including the Pretty Pond APA and the Coco Plum APA and any other instrument executed in furtherance of the transactions contemplated by the Plan), shall not be taxed under any law imposing stamp, transfer or similar tax.

b.      The Court shall retain jurisdiction with respect to any disputes or controversies arising with respect to the above ordered paragraph.

c.      From and after the Effective Date, pursuant to Section 1146(a) of the Bankruptcy Code, all state and local government agencies, entities, or authorities are jointly and severally restrained and enjoined from commencing or continuing any action to collect from Pretty Pond, Coco Plum, the Pretty Pond Property, or the Coco Plum

Property, any stamp, transfer or similar tax within the meaning of section 1146(a) of the Bankruptcy Code with respect to the transactions contemplated or described in the Plan.

d.    All applicable government entities shall record any recordable instrument or transfer with respect to the transfer of any asset pursuant to or in furtherance of the Plan, and any other related instruments contemplated under the Plan, specifically including, without limitation, a deed conveying ownership of the Pretty Pond Property under the Pretty Pond APA and the Coco Plum Property under the Coco Plum APA to the respective Buyers herein and any releases of liens, encumbrances and claims to the Pretty Pond Property or Coco Plum Property, as applicable (collectively, the "Transfer Documents") without the payment of any state or local taxes to the fullest extent provided in section 1146(c) of the Bankruptcy Code.

e.    Each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instrument necessary, contemplated by the Plan and this Confirmation Order.

f.    All filing officers are directed to accept for recording or filing and to record or file the Transfer Documents immediately upon presentation thereof without payment of such taxes and without the presentation of any affidavits, instruments or returns otherwise required for recording, and the recording officer is directed to comply with the provisions of this Confirmation Order.

8.    Effects of Confirmation; Effectiveness; Successors and Assigns. On the Effective Date, the stay contemplated by Bankruptcy Rule 3020(e) is waived and lifted in all respects. Notwithstanding any otherwise applicable law but subject to the occurrence of the Effective Date, upon entry of this Confirmation Order, the terms of the Plan (including the exhibits thereto

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 25 of 37**

and referenced herein, and all documents and agreements executed pursuant to the Plan) and the Confirmation Order shall be binding upon (a) the Debtors; (b) all holders of Claims against and Interest in the Debtors, whether or not impaired under the Plan, and whether or not, if impaired, such holder accepted the Plan; (c) any other party in interest; (d) any Person making an appearance in these Cases; and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

9.      <u>Classification and Treatment</u>. All Claims and Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved. The treatment of all Claims and Interests as provided in the Plan shall be, and hereby is, approved.

10.     <u>Administrative Expense Claims</u>. (Other than Professional Claims or the Claims on account of the DIP Loans). The holder of any Administrative Expense Claim, other than holders of Professional Claims or the Claim of the DIP Lenders on account of the DIP Loans, must File with the Court, and serve on the Liquidating Trustee and her counsel, an application for payment of such Administrative Expense ("<u>Administrative Expense Application</u>") on or before the Administrative Expense Claim Bar Date, which is thirty (30) days after the Effective Date. An Administrative Expense Application must include at a minimum: (a) the name of the holder of the Administrative Expense Claim; (b) the amount of the Claim; and (c) the basis of the Claim (including applicable support documentation). Failure to timely File and serve the Administrative Expense Application shall result in the Administrative Expense Claim being forever barred and discharged. A timely filed and served Administrative Expense Claim shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days after its filing and

service ("Administrative Expense Objection Deadline"). If an objection is filed to an Administrative Expense Application by the Administrative Expense Objection Deadline, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Order of the Court.

11.    Professional Claims. On or prior to the Administrative Expense Claim Bar Date, each Professional who holds, or asserts a Professional Claim shall file with the Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections, if any, to Professional final fee applications must be filed and served on the Liquidating Trustee and the Professional to whose application the objections are addressed no later than twenty-four (24) days after the filing of the relevant final fee application. The Liquidating Trustee shall pay any outstanding amounts owed to a Professional within ten (10) days after entry of a Final Order with respect to such Professional's final fee application.

12.    Enforceability of the Plan. Pursuant to Sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable notwithstanding any otherwise applicable nonbankruptcy law. The modifications are enforceable and do not constitute material modifications that might otherwise require re-solicitation.

13.    Authorization to Implement the Plan. Upon entry of this Confirmation Order, and subject to the occurrence of the Effective Date, the Debtors and the Liquidating Trustee are authorized to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the

Court such that no further approval, act, or action need to be taken under any applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or the Liquidating Trustee to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or the Confirmation Order.

14.     <u>Payment of Fees and Expenses of the Liquidating Trustee</u>. The Liquidating Trustee may employ on behalf of herself, the Liquidating Debtors, and the Liquidating Estates, without Court order, professional persons, as such term is used in the Bankruptcy Code, to assist the Liquidating Trustee to carry out the duties under the Plan. The Liquidating Trustee and her professionals shall be compensated at their respective standard hourly rates or such other fee structure as may be agreed to by the Liquidating Trustee (and as limited in the Liquidating Trust Agreement), for time spent administering and implementing the Plan and the resolution of objections to Claims, if any are asserted, with further motion or application with approval of employment by the Court. Compensation to the Liquidating Trustee and her professionals, shall be made from the remaining assets of the Liquidating Debtors without necessity, motion, or application to the Court or order from the Court.  The form of Liquidating Trust Agreement filed on September 23, 2020 [Docket No. 136] is hereby approved and the Debtors are authorized to sign such agreement.

15.     <u>Distributions Under the Plan</u>. The Liquidating Trustee is approved as the disbursing agent and shall have all powers, rights, duties, and protections afforded to the Liquidating Trustee to make Distributions under the provisions of the Plan. Pursuant to the terms

and provisions of the Plan, the Liquidating Trustee shall make the Distributions specified under the Plan.

16. <u>Resolution of Claims</u>. Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. All objections to Claims shall be filed with the Court by the Claims Objection Deadline, which is one hundred-twenty (120) days from the Effective Date unless further extended by order of the Court, and a copy of the objection will be served upon the holder of the Claim to which such objection pertains and the United States Trustee. Nothing in the Plan or this Confirmation Order is intended to affect or modify the right of any party-in-interest to object to a Claim or Interest under Section 502(a) of the Bankruptcy Code.

17. <u>Claims of Taxing Authorities</u>. Pasco County and Sarasota County tax claims shall be treated as Priority tax claims under the Plan.

18. <u>Tax Claim Treatment</u>. Notwithstanding any provisions of any final orders pertaining to post-petition financing, use of cash collateral or plan confirmation, or any agreements validated by any such orders, any liens currently held by any Tax Authorities shall neither be primed by nor subordinated to any liens granted or acknowledged thereby or pursuant to this order. To the extent any such claims are allowed, the Debtors shall pay the Tax Authorities' pre-petition claims with interest from the petition date through the Effective Date and from the Effective Date through the date of payment in full at the applicable state statutory rate of 1% per month pursuant to 11 U.S.C. §§ 506(b), 511, and 1129. These Claims shall be paid upon the Closing of the Sale of the Debtors' assets. In the event of a claim objection, the Tax Authorities' claims shall be entitled to interest that accrues while the claim objection is pending. The Tax Authorities shall receive payment of their administrative expense claims for

year 2020 ad valorem property taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an administrative expense claim and request for payment as a condition of allowance pursuant to 11 U.S.C. Section 503(b)(1)(D). The Tax Authorities shall retain their prepetition and postpetition liens until all taxes and related interest, penalties, and fees (if any) have been paid in full. In the event of a default under the plan, the Tax Authorities shall send notice of default to counsel for the Debtors/Reorganized Debtors via facsimile or electronic mail, and the Debtors shall have 15 days from the date of such notice to cure the default. In the event of failure to cure the default timely, the Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable nonbankruptcy law without further recourse to the Bankruptcy Court. At the closing of the sale of the Debtors' property, the Tax Authorities shall receive payment in full from the sale proceeds, with the liens that secure all amounts that are not paid at the sale closing remaining attached to the property sold.

19. <u>No Effect on Governmental Regulatory Authority</u>. Notwithstanding anything in the Plan or this Order to the contrary, nothing in the Plan or this Order or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("<u>Governmental Unit</u>") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("<u>Claim</u>"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in the Plan or this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability

described in the preceding sentence. Further, nothing in the Plan or this Order or related documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in the Plan or this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in the Plan or this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in the Plan or this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan or this Order or to adjudicate any defense asserted under the Plan or this Order.

20. _Rejection of Executory Contracts_. Pursuant to Section 7.1 of the Plan, on the Effective Date, all executory contracts and unexpired leases to which the Debtors are a party that had not otherwise been assumed or rejected pursuant to a Final Order of the Court shall be deemed rejected as of the Petition Date.

21. _Rejection Damage Claims_. Pursuant to Section 7.3 and 7.5 of the Plan, if the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Rejection Claim, any such Rejection Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates (or the Liquidating Debtors or the Liquidating Debtors' Estates) unless a proof of Rejection Claim is Filed by the Rejection Damages Bar Date, which shall be thirty (30) days after the Confirmation Order or such later date specified by the Bankruptcy Court in the Confirmation Order or in an Order approving such rejection. The Liquidating Trustee shall file any objection to a Rejection Claim on or before the Claims Objection Deadline.

22.     _Payment of U.S. Trustee Fees._  All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid on a quarterly basis until the Cases are closed, converted, or dismissed. The Debtors shall be liable for the payment of all quarterly fees due and payable pursuant to 28 U.S.C. §1930(a)(6) prior to the Effective Date. The Debtors and Liquidating Debtors shall be jointly and severally liable for the payment of all quarterly fees due pursuant to 28 U.S.C. § 1930 after the Effective Date, and for any unpaid quarterly fees incurred by the Debtors prior to the Effective Date. The Liquidating Debtors through the Liquidating Trustee shall provide the United States Trustee with post-confirmation quarterly reports that shall include all disbursements for that quarter.

23.     _Retention of Causes of Action_.

a.      Except as otherwise provided in the Plan and this Confirmation Order, all Causes of Action shall be retained for the benefit of the Debtors and their Estates as set forth in the Plan, the Disclosure Statement (including all appendices thereto), and modifications. These Causes of Action include, without limitation, all claims and Causes of Action listed in, referenced in, or attached as an appendix to the Disclosure Statement or the Schedules. The Liquidating Trustee is hereby designated as the Liquidating Debtors Estates' representative for purposes of prosecuting and enforcing all Causes of Action, and the Liquidating Trustee has standing to bring all Causes of Action. Except as otherwise provided in the Plan and this Confirmation Order, the Liquidating Trustee's right to commence, pursue, prosecute, enforce, or settle such Causes of Action on behalf of the Liquidating Debtors shall be, and hereby is, preserved.

b.      No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that

the Debtors, or the Liquidating Trustee on behalf of the Liquidating Debtors, will not pursue all available Causes of Action. The Debtors and the Liquidating Trustee on behalf of the Liquidating Debtors' Estates expressly reserve, specifically and unequivocally, all rights to prosecute and enforce and all Causes of Action against any Person or Entity, except as otherwise specifically and expressly provided in the Plan. Unless any Causes of Action against a Person or Entity is specifically and expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an Order, the Debtors and the Liquidating Trustee on behalf of the Liquidating Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), standing, or laches, shall apply to such Cause of Action upon or after the confirmation or consummation of the Plan by reason of entry of the Confirmation Order.

24. <u>Releases, Injunction and Exculpations</u>. The release, injunction and exculpation provisions set forth in Article 12 of the Plan shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.

25. <u>Release of the Debtors</u>. Except as otherwise specifically provided by the Plan and this Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, of (a) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interests in, the Debtors and the assets and properties of the Debtors, whether known or unknown; and (b) all Causes of Action (whether known or unknown, either directly or derivatively through the Debtors) against, Claims (as defined in Section 101 of the

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING MQ PRETTY POND, LLC AND MQ COCO PLUM, LLC'S SECOND AMENDED JOINT PLAN OF LIQUIDATION - Page 33 of 37**

Bankruptcy Code) against, liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or indirect assets and properties of, and obligations of successors and assigns of, the Debtors and their successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction, or other activity or security, instrument, or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan. Notwithstanding anything herein to the contrary, nothing in the Plan shall constitute a satisfaction and release of any Claim or Cause of Action preserved in Article 3, Section G "Retention of Causes of Action" of the Disclosure Statement, including but not limited to the Causes of Action specifically identified in the Disclosure Statement.

26.    Nothing in the Confirmation Order or the Plan releases, discharges, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5), (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date, or (iii) any exercise of a Governmental Unit's police or regulatory powers.

27.    Retention of Jurisdiction. Pursuant to Section 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Cases or the Plan; (c) that relates to the matters set forth in Article 9 of the Plan.

28.    Specific Jurisdiction. The Court specifically retains jurisdiction pursuant to and for purposes set forth in Sections 105 and 1127 of the Bankruptcy Code and the Plan, including

without limitation, to determine whether or not any claim or right has been affected by the Plan or this Confirmation Order, and for such other purposes as may be necessary or useful to aid in the enforcement or implementation of the Plan or this Confirmation Order.

29.     Automatic Stay Under Section 362(a). The stay in effect in the Cases pursuant to Section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further effect, subject to the injunction set forth in the Confirmation Order, Article 12 of the Plan and/or Sections 524 and 1411 of the Bankruptcy Code. Notwithstanding the dissolving of the automatic stay and the imposition of the injunction referenced above, the Bistum's Motion for Relief from Stay [ECF No. 110] (the "Motion for Relief"), a hearing on which has been continued by agreement, shall be treated as a motion for relief from stay until the Effective Date, and thereafter will be treated by the Court as seeking relief from the injunction set forth in the Confirmation Order to determine the Bistum's Claims against the Debtors in the pending state court litigation referenced in the Motion for Relief, to be determined under the standards applied by this Court in adjudicating relief from the automatic stay.

30.     Designation of Liquidating Trustee. As of the Effective Date, Allison Byman is hereby designated as the Liquidating Trustee. The Liquidating Trustee is hereby vested with full power and authority on behalf of the Debtors to take any and all actions deemed necessary or appropriate to carry out the duties contemplated under the Plan and all other provisions of the Plan. The Liquidating Trustee shall have full and unqualified authority to delegate any or all of these powers to any of her authorized agents.

31.     Notice of Confirmation Order. The Debtors shall serve a copy of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all

creditors, the United States Trustee, and entities that requested notice in these Cases, by first-class mail, postage prepaid.

32. <u>Notice of Effective Date</u>. Within one (1) business day after the day selected by the Debtors to be the Effective Date, the Debtors shall File a notice of the occurrence of the Effective Date and serve a copy of same on (a) all creditors, (b) the United States Trustee, and (c) entities that have requested notice in these Cases. "Substantial Consummation" of the Plan, as defined in Bankruptcy Code Section 1101(2), shall be deemed to occur on the Effective Date.

33. <u>Reference to Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order. If any inconsistencies occur between the Plan and this Order, this Order shall govern.

34. <u>Calculation of Time Period</u>. All time periods set forth in this Confirmation Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35. <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent Order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order; nor shall such reversal, modification, or vacatur of the Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or

undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

36.  <u>Waiver of the Stay</u>.  The requirements under Bankruptcy Code Rule 3020(e) that an order confirming a plan is stayed until expiration of 14 days after entry of the order are hereby waived.  The Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

### ### END OF ORDER ###

<u>Prepared by:</u>

**CROWE & DUNLEVY, P.C.**

By: */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Seth A. Sloan
State Bar No.24098437
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile:  214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: seth.sloan@crowedunlevy.com

**COUNSEL FOR DEBTOR**