

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 11, 2021**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **WATERS RETAIL TPA, LLC,** *et al.,*[1] | § | Case No. 20-30644-sgh-11 |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |
|  | § |  |
|  | § |  |

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING PLAN OF LIQUIDATION OF WATERS RETAIL TPA, LLC[2]**

Came on for consideration confirmation of the *First Amended Plan of Liquidation of Waters Retail TPA, LLC* (as may be further amended modified, or supplemented from time to time, the "<u>Plan</u>") [Docket No. 177] filed by Waters Retail TPA, LLC (the "<u>Debtor</u>" or "<u>Waters Retail</u>"), debtor and debtor-in-possession in the above-referenced case (the "<u>Case</u>"); and the Court having entered an Order, among other things, *Conditionally Approving the First Amended*

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the Order Directing Joint Administration of Chapter 11 Cases [Docket No. 61]. The Debtors' mailing address is 4622 Maple Ave., Ste. 200, Dallas, Texas 75219.

[2] This Amended Order is entered solely to address a scrivener's error in Exhibit A.

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FIRST
AMENDED PLAN OF LIQUIDATION OF WATERS RETAIL TPA, LLC - Page 1 of 36**

*Disclosure Statement in Support of First Amended Plan of Liquidation of Waters Retail TPA, LLC* (the "<u>Disclosure Statement</u>") and approving certain procedures for the sale of substantially all of the Debtor's Assets to a third party as well as the solicitation and tabulation of votes for the Plan (the "<u>Conditional Disclosure Statement Order</u>") [Docket No. 181]; and upon certification of Seth Sloan, the balloting agent in the Case; and the Court having reviewed the certification filed certifying the ballots accepting and rejecting the Plan; and the Court having held the hearing to confirm the Plan on December 16, 2020 (the "<u>Confirmation Hearing</u>") after due notice to holders of Claims and Interests and other parties in interest in accordance with the Disclosure Statement, the Conditional Disclosure Statement Order, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>"); and the Court having reviewed all documents in connection with confirmation of the Plan and having heard all parties desiring to be heard at the Confirmation Hearing; and upon the record compiled in this Case; and after due deliberation and consideration of all the foregoing; and sufficient cause appearing therefore; the Court hereby makes the following findings of fact and conclusion of law:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

**THE COURT FINDS AND CONCLUDES THAT:**

      A.   <u>Capitalized Terms</u>. Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

      B.   <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of facts constitute

conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. <u>Jurisdiction, Venue, Core Proceeding</u>. This Court has jurisdiction over this Case pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

D. <u>Disclosure Statement</u>. On November 12, 2020 the Debtor filed its Disclosure Statement [Docket No. 159], which put parties on notice that the Debtor would seek authority in connection with confirmation of the Plan to sell substantially all of the assets of the Debtor to a third party ("<u>Sale</u>").

E. <u>Sale of Debtor's Property</u>. The Disclosure Statement and Plan provides for the purchase and sale of the Debtor's Property.

    a. <u>Contract to Purchase Waters Retail Property</u>.[3] The Disclosure Statement included a copy of the Waters Retail and WMG Development, LLC, ("<u>WMG</u>" or the "<u>Waters Retail Buyer</u>") Purchase and Sale Agreement ("<u>Waters Retail PSA</u>") as well as certain bidding requirements for parties interested in submitting a competing bid to purchase the Waters Property.

    b. <u>Bid Procedures Order</u>. On November 24, 2020, the Court granted the *Expedited Motion of Waters Retail TPA, LLC Only for Bidding Procedures, Break-Up Fee and Other Protections in Advance of Sale, and Granting Related Relief* [Docket No. 180] (the "<u>Bid Procedures Motion</u>") which approved of Debtor's selection of WMG as the "<u>Stalking Horse Bidder</u>" as well as other bid qualifications and protections.

    c. <u>Sale of Waters Retail Property</u>. The Disclosure Statement provided that the Waters Retail Property would be sold to WMG pursuant to the Waters Retail PSA

---

[3] Any defined terms not defined herein shall have the meanings ascribed to them in the Plan.

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FIRST AMENDED PLAN OF LIQUIDATION OF WATERS RETAIL TPA, LLC - Page 3 of 36**

unless Debtor received a signed PSA on the same or better terms as the Waters Retail PSA, including a purchase price of no less than $3,880,000.00, by the Waters Bid Deadline.

F.    Implementation of the Sale.  The Plan implements the sale of the Waters Retail Property to the Waters Retail Buyer (the "Waters Retail Buyer") and the receipt of the Waters Retail Proceeds shall fund the Plan payments for the Case.

G.    Conditional Disclosure Statement Order.  On November 24, 2020, the Court entered an order conditionally approving the Disclosure Statement [Docket No. 181] in accordance with Section 105(d)(2)(vi) of the Bankruptcy Code (the "Conditional Disclosure Statement Order"), and establishing deadlines for the solicitation of votes for the confirmation of the Plan.

H.    Adequacy of the Disclosure Statement. The information contained in the Disclosure Statement contained extensive material information regarding the Debtor so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code Section 1125 and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. The Debtor's use of the Disclosure statement to solicit votes to accept or reject the Plan was authorized by the Disclosure Statement Order and was appropriate. Solicitation of votes on the Plan was in compliance with the Conditional Disclosure Statement Order.

I.    Solicitation. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other

applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

J.      Voting. As set forth in the record at the Confirmation Hearing, and by certification of Seth Sloan, each class of Claims and Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)), is not impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)), or the Plan does not discriminate unfairly and is fair and equitable with respect to such class of Claims and/or Interests (11 U.S.C. § 1129(b)(1)). The Plan has been accepted by Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims and Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8). Voting on the Plan and treatment thereunder are reflected on the Declaration of Seth Sloan Regarding the Tabulation of Ballots Accepting or Rejecting the Debtor's Chapter 11 Plan of Liquidation filed by the Debtor on December 15, 2020 (the "Sloan Declaration") [Docket No. 192]. The procedure by which ballots were received and tabulated was fair, properly conducted, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules, the Disclosure Statement and the Disclosure Statement Order.

K.      Modifications to the Plan. The modifications and amendments in the Plan set forth on the record at the Confirmation Hearing, or made by this Confirmation Order, do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code, or re-solicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims not accepting such modifications be afforded an opportunity to change previously cast acceptances or rejection of the Plan. Disclosure of the modifications on the

record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Cases. Accordingly, pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims that have accepted or are conclusively deemed to have accepted the Plan are deemed to have accepted such modifications to the Plan.

L.      Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the proponent of the Plan. The Debtor appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). Any discharge, release, injunction and exculpation provisions of the Plan are set forth in specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

M.      Liquidating Trustee. On September 23, 2020, MQ Pretty Pond, LLC ("Pretty Pond") and MQ Coco Plum, LLC ("Coco Plum") filed their *Notice of Filing of Liquidating Trust Agreement* [Docket No. 136] which attached a draft version of the Liquidating Trust Agreement (the "Trust Agreement") along with the curriculum vitae for the proposed Liquidating Trustee. On October 9, 2020, the Pretty Pond and Coco Plum filed their *Notice of Filing Revised Liquidating Trust Agreements* [Docket No. 149] which attached the Pretty Pond Liquidating Trust Agreement and the Consolidated Liquidating Trust Agreement, incorporating the Court's comments from the Pretty Pond and Coco Plum confirmation hearing. On the Effective Date of the Coco Plum Plan, the Consolidated Liquidating Trustee was appointed for the Consolidated Liquidating Trust. On the Effective Date of this Plan, Waters Retail Claims and assets go into this already formed Consolidated Liquidating Trust.

N.      Compliance with Bankruptcy Code Section 1129(a)(1). The Plan complies with any and all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, thereby satisfying Section 1129(a)(1). The Court makes further findings below that the Plan complies

with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The omission or exclusion of a specific finding herein does not constitute a finding that the Debtor has not complied with any and all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

O.      Proper Classification Under Sections 1122 and 1123(a)(1). In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates five (5) Classes of Claims (Classes 1.1, 2.1, 2.2, 2.3, and 3). The Claims placed in each Class are substantially similar to other Claims in each such Class, and such classification is therefore consistent with Bankruptcy Code Section 1122. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes and the Plan's treatment thereof do not unfairly discriminate between holders in each Class of Claims. The Plan satisfies Bankruptcy Code Sections 1122 and 1123(a)(1).

P.      Specification of Classes Not Impaired under the Plan Under Section 1123(a)(2). Article 3 of the Plan specifies each particular Class of Claims or Interest that is not impaired under the Plan. The Plan satisfies Bankruptcy Code Section 1123(a)(2).

Q.      Specified Treatment of Impaired Classes – Section 1123(a)(3). Article 5 of the Plan specifies the treatment of the impaired Classes of Claims thereby satisfying Bankruptcy Code Section 1123(a)(3).

R.      No Discrimination – Section 1123(a)(4). The Plan either provides the same treatment for each Claim in each respective Class or the holder of a particular Claim or Interest has agreed to a less favorable treatment of its particular Claim or Interest, thereby satisfying Bankruptcy Code Section 1123(a)(4).

S.     <u>Implementation of the Plan – Section 1123(a)(5)</u>. Article 6 of the Plan provides adequate and proper means for implementing the Plan. Article 6 establishes the procedures for the sale of the Debtor's Property to the Waters Retail Buyer.  The Plan implements the sale of the Waters Retail Property to the Waters Retail Buyer and the receipt of the Waters Retail Proceeds from the sale of the Waters Retail Property shall fund the Plan payments. Article 6 also sets forth the establishment of the Consolidated Liquidating Trust upon the Effective Date.  The Consolidated Liquidating Trustee will be authorized to pursue any and all Causes of Action on behalf of the Debtor and its Estate, including Chapter 5 Causes of Action.

T.     <u>Charter of the Debtor – Section 1123(a)(6)</u>. The Plan is a liquidating plan.  Article 5 of the Plan specifies the treatment of Equity Interest Holders.  Equity holders shall only receive distributions under the Plan to the extent that all senior claims have been paid in full. To the extent that it is applicable, Bankruptcy Code Section 1123(a)(6) is satisfied.

U.     <u>Selection of Officers and Directors – Section 1123(a)(7)</u>. The Plan as a liquidation plan provides for the designation of the Consolidated Liquidating Trustee to liquidate remaining assets, make distribution to creditors, and wind up the Debtor's business. The Court finds the designation of the Consolidated Liquidating Trustee consistent with the interests of holders of Claims or Interests against the Debtor.

V.     <u>Additional Plan Provisions – Section 1123(b)</u>. The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

W.     <u>Compliance with Bankruptcy Code Section 1129(a)(2)</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code Section 1129(a)(2). Specifically, the Debtor offered the testimony of Russell Perry, the

"Independent Director," stating that the Plan complies with all applicable provisions of the Bankruptcy Code.

X. <u>Plan Proposed in Good Faith – Section 1129(a)(3)</u>. The Debtor has proposed the Plan in good faith and not by means forbidden by law, thereby satisfying Bankruptcy Code Section 1129(a)(3). The Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtor's assets in a fashion to maximize the recovery to the Debtor's creditors in accordance with the priorities set forth in the Bankruptcy Code.

Y. <u>Payment for Services or Costs and Expenses – Section 1129(a)(4)</u>. Any payments made or to be made by the Debtor for services or for costs and expenses in connection with this Case have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying Bankruptcy Code Section 1129(a)(4).

Z. <u>Identification of Directors, Officers, and Insiders – Section 1129(a)(5)</u>. The Plan describes the appointment of the Consolidated Liquidating Trustee. The identity of the proposed Consolidated Liquidating Trustee was made known by the Debtor on September 23, 2020 [Docket No. 136] and a copy of the Consolidated Liquidating Trust Agreement was filed with Court on October 9, 2020 [Docket No. 149]. The Plan does not propose the retention or employment of an insider of the Debtor. Therefore, Bankruptcy Code Section 1129(a)(5) has been satisfied.

AA. <u>No Rate Changes – Section 1129(a)(6)</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the

occurrence of the Effective Date. Therefore, Bankruptcy Code Section 1129(a)(6) is inapplicable.

BB.    <u>Best Interest of Creditors – Section 1129(a)(7)</u>. As set forth in the Liquidation Analysis and by evidence presented at the Confirmation Hearing, the "best interest" test is satisfied as to all Impaired Classes of Claims and Interests that have not accepted the Plan. As set forth in the Liquidation Analysis, a liquidation under Chapter 7 would adversely affect the ultimate proceeds available for distribution to holders of the Secured Claims due to: (i) increased costs, including administrative fees and costs payable to the chapter 7 trustee and professional advisors of the trustee; (ii) the potential loss of the contract to sell the Property, which required such Sale to be through a plan to avoid documentary/stamp taxes that would be payable in a chapter 7 liquidation; (iii) the need to retain additional professionals to market the Property; (iv) loss of value through passage of time; and (v) limitations of Section 721 of the Bankruptcy Code. Confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a Chapter 7 liquidation of the Debtor's assets.

CC.    <u>Acceptance by Impaired Classes– Section 1129(a)(8)/1129(b)(1)</u>. Each class of Claims and Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)), is not impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)), or the Plan does not discriminate unfairly and is fair and equitable with respect to such class of Claims and/or Interests (11 U.S.C. § 1129(b)(1)). The Plan has been accepted by Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims and Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8).

DD.    <u>Treatment of Administrative, Other Priority Claims and Priority Tax Claims – Section 1129(a)(9)</u>. Consistent with Section 1129(a)(9)(A), Article 4 of the Plan provides that

each holder of an Allowed Administrative Expense Claim shall be paid the total amount of such holder's Allowed Administrative Expense Claim as soon as reasonably practicable after the later of (a) the Effective Date, (b) payment in full of the DIP Administrative Claim, (c) the allowance of such Administrative Expense Claim, and (d) such other date agreed upon in writing by the Debtor or the Liquidating Debtor and the holder of such Allowed Administrative Expense Claim. Notwithstanding the forgoing, Allowed Professional Claims shall be paid pursuant to Article 4 of the Plan. Consistent with Section 1129(a)(9)(C), Article 4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive all Distributions under the Plan after the payment of the DIP Administrative Claim until such time as Allowed Priority Tax Claims are paid in full. No holder of an Allowed Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim has objected to this treatment under the Plan and if they have, such objections have been withdrawn.

EE.    Acceptance by Impaired Class – Section 1129(a)(10). At least one Class of Claims for the Debtor that is impaired under the Plan has accepted the Plan thereby satisfying Bankruptcy Code Section 1129(a)(10).

FF.    Feasibility – Section 1129(a)(11). The Plan is a liquidating plan and the funding of which is dependent upon the successful liquidation of the Debtor's assets, and thus the feasibility requirement of Bankruptcy Code Section 1129(a)(11) is satisfied.

GG.    Payment of Fees – Section 1129(a)(12). All fees payable under 28 U.S.C. §1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to the Plan thus satisfying the requirements of Bankruptcy Code Section 1129(a)(12).

HH.     <u>Continuation of Retiree Benefits – Section 1129(a)(13)</u>. The Debtor does not have any retiree benefits to be continued under the Plan. Thus, Bankruptcy Code Section 1129(a)(13) is not applicable.

II.     <u>Domestic Support – Section 1129(a)(14)</u>. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Thus, Bankruptcy Code Section 1129(a)(14) is not applicable.

JJ.     <u>Individual Debtor Cases – Section 1129(a)(15)</u>. The Debtor is not an individual debtor and thus Bankruptcy Code Section 1129(a)(15) is not applicable.

KK.     <u>Transfers of Property Section 1129(a)(16)</u>. All transfers of property under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Thus, Bankruptcy Code Section 1129(a)(16) is satisfied.

LL.     <u>Only Plan - Section 1129(c)</u>. The Plan is the only plan that has been filed in this Case and it has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

MM.     <u>Not for Tax Avoidance - Section 1129(d)</u>. No party in interest has requested that the Court deny Confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

NN.     <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements of confirmation set forth in Bankruptcy Code Section 1129.

OO.     _Implementation of the Plan_. Article 6 of the Plan provides the means for implementing the Plan. The provisions of Article 6 of the Plan are consistent with and permissible under Section 1123(a)(5) of the Bankruptcy Code and are consistent with the interests of Creditors, holders of Interest, and public policy.

PP.     _Preservation of Causes of Action_. The claims and Causes of Action referenced or listed in the Plan, the Disclosure Statement, and Article 3, Section G "Retention of Causes of Action" of the Disclosure Statement are hereby specifically and unequivocally reserved and retained for the prosecution, enforcement, and pursuit by the Debtor and the Consolidated Liquidating Trustee, who is designated as the representative of the Consolidated Liquidating Debtor's Estate for such purposes, pursuant to Section 1123(b)(3)(B). Moreover, nothing herein or in the Plan or any other documents associated with the Plan or Disclosure Statement, including the Consolidated Liquidating Trust Agreement, limits, alters, abrogates or divests the rights of any creditor or party-in-interest to object to any Claims as permitted by 11 U.S.C. § 502, to seek equitable subordination pursuant to 11 U.S.C. § 510 to any filed or scheduled Claims in this Case, or to seek recharacterization of any scheduled or filed Claims in this Case; provided, however, that nothing in the foregoing clause shall confer any rights to any parties that do not already have them under the Bankruptcy Code.

QQ.     _Releases, Exculpations, and Injunctions._ Any releases, exculpations, and injunctions provided in the Plan (a) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (b) are the product of good faith, arm's-length negotiations, (c) are integral elements of the global settlement embodied in the Plan and are essential to the Plan's implementation, (d) confer material benefit on, and are in the best interests of the Debtor, its Estate and Creditors; and (e)

are consistent with Sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

RR. <u>Sale of Waters Retail Property (as defined in the Waters Retail PSA)</u>.

a.    The Plan is to be implemented by the sale of the Waters Retail Property to the Waters Retail Buyer. Certain Plan payments are to be funded from the Waters Retail Proceeds.

b.    The Waters Retail PSA was negotiated and entered into in good faith, without collusion, and at arm's length. The Waters Retail Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby.

c.    Neither Waters Retail nor the Waters Retail Buyer has engaged in conduct that would cause or permit the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

d.    The Waters Retail Buyer is not a successor in interest or alter ego of Waters Retail and should not have any successor or transferee liability for any obligations or liabilities of Waters Retail as a result of the purchase of the Waters Retail Property.

e.    Upon entry of this Confirmation Order, the Waters Retail PSA is a legal, valid and binding contract between the Debtor and the Waters Retail Buyer and is enforceable according to its terms. All terms of the Waters Retail PSA, specifically including, without limitation, the purchase price to be paid by the Waters Retail Buyer thereunder, are: (i) fair and reasonable, (ii) represent the highest and best offer for the purchase of the Waters Retail Property, (iii) will provide the best prices obtainable for the Waters Retail Property and assumed liabilities as identified in the Waters Retail PSA and a greater recovery for the estate's creditors than would be provided by any other practical available alternative, and (iv) constitute reasonably equivalent and fair consideration for the sale of the Waters Retail Property and assumed liabilities as identified in the Waters Retail PSA.

f.    As of the Closing Date, the consummation of the Sale and the other transactions contemplated by the Waters Retail PSA will be legal, valid and property authorized under all applicable provisions of the Bankruptcy Code, including Sections 105(a), 363(b), 363(f), 363(m), 365(a), 365(b), and 365(f), 1123 and/or 1129, and all of the applicable requirements of such sections have been complied with.

g.    The Debtor has articulated sound business reasons for entering into the Waters Retail PSA and for selling the Waters Retail Property on the terms and conditions

set forth in the Waters Retail PSA, and it is a reasonable exercise of Waters Retail's business judgment to execute, deliver, and consummate the transactions contemplated by the Waters Retail PSA. The Debtor may sell the Waters Retail Property to the Waters Retail Buyer free and clear of all liens, claims, and encumbrances, with all such liens claims, and encumbrances to attach to the Waters Retail Proceeds and to be satisfied from the Waters Retail Proceeds as set forth in Section 6 of the Plan.

SS. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including, but not limited to, any instrument executed in furtherance of the transactions contemplated by the Plan, including any deeds or conveyance documents executed pursuant to the Waters Retail PSA) shall be exempt and shall not be subject to tax under any law imposing sale tax or similar tax, in each case to the fullest extend provided by Section 1146 of the Bankruptcy Code and pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct any applicable government entity to record any recordable document executed in connection with the consummation of the Plan, without the payment of such taxes.

TT. <u>Objections</u>. All timely filed objections to confirmation of the Plan were withdrawn, settled, or overruled.

## **<u>DECREES</u>**

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1. <u>Adequacy of the Disclosure Statement</u>. The Disclosure Statement is hereby **APPROVED** on a final basis as containing adequate information within the meaning of Bankruptcy Code Section 1125 and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules and regulations.

2. <u>Confirmation of the Plan.</u> The Plan, which consists of the Plan and modifications set forth in this Confirmation Order or on the record at the Confirmation Hearing, is

**APPROVED** and **CONFIRMED** under Bankruptcy Code Section 1129 in its entirety. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3. <u>Objections.</u> No objections were filed to confirmation of the Plan.

4. <u>Approval of Plan Modifications.</u> The modifications and amendments in the Plan made by this Confirmation Order are hereby approved. Such modifications do not materially and adversely affect or change the treatment of any creditor who has not accepted such modifications. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code, or re-solicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims not accepting such modifications be afforded an opportunity to change previously cast acceptances or rejection of the Plan. Disclosure of the modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Cases.

5. <u>Vesting of Waters Retail Property.</u>

a. The Waters Retail PSA is approved, and the Debtor is authorized and directed to sell the Waters Retail Property to the Waters Retail Buyer and otherwise consummate the transactions contemplated by the Waters Retail PSA. Except as otherwise provided in the Waters Retail PSA and this Confirmation Order, upon the Closing, the Waters Retail Property as set forth in the Waters Retail PSA shall vest in Waters Retail Buyer free and clear of all liens, claims, encumbrances, and interests claimed or held by any party (other than the Waters Retail Buyer) in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code, which liens, claims,

encumbrances, and interests will attach to the Waters Retail Proceeds with the same validity, priority, force and effect and subject to the same defenses as existed prior to the Closing Date. On the Closing Date, any and all pre-existing liens, claims, and encumbrances or other matters affecting title to the Waters Retail Property shall be deemed extinguished as of such date, with such liens and claims to attached to Waters Retail Proceeds as provided in the Plan and herein. Without limiting the generality of the foregoing, all liens, encumbrances and claims against the Waters Retail Property as of the Closing Date shall be unconditionally and irrevocably released, discharged and terminated as to the Waters Retail Property by the Waters Retail Buyer under the Waters Retail PSA.

b.      The Waters Retail Buyer is a "good faith" Buyer within the meaning of Section 363(m) of the Bankruptcy Code, and therefore, is entitled to all of the protections afforded thereby.  In the absence of a stay pending appeal of this Order, if all or any of the provisions of this Order are hereafter reversed or modified on appeal, such reversal or modification shall not affect the validity and enforceability of any sale, transfer or assignment authorized by this Order, specifically including, the Sale of the Waters Retail Property to the Waters Retail Buyer under the Waters Retail PSA, and notwithstanding any reversal or modification on appeal, any sale transfer, or assignment, specifically including the Sale of the Waters Retail Property to the Waters Retail Buyer under the Waters Retail PSA, shall be governed in all respects by the original provisions of this Order.

c.      Neither Waters Retail nor the Waters Retail Buyer has engaged in conduct that would cause or permit the Waters Retail PSA or the sale of the Waters Retail

Property to the Waters Retail Buyer thereunder to be avoided under Section 363(n) of the Bankruptcy Code. The Waters Retail Buyer is not a successor in interest or alter ego of Waters Retail and shall not have any successor or transferee liability for any obligations or liabilities of Waters Retail as a result of the purchase of the Waters Retail Property.

  d.  Effective upon the Closing of the Sale of the Waters Retail Property to the Waters Retail Buyer under the Waters Retail PSA, all holders of liens, encumbrances and other claims are hereby barred and permanently enjoined from in any way asserting or pursuing such liens, encumbrances and other claims against the Waters Retail Buyer, the Waters Retail Buyer's successors or assigns, the Waters Retail Property and/or any other Property of the Waters Retail Buyer or its successors and assigns. Following the closing of the sale of the Waters Retail Property to the Waters Retail Buyer under the Waters Retail PSA, no holder of any liens, encumbrances and other claims shall in any way interfere with the Waters Retail Buyer's possession of, title to, or use and enjoyment of the Waters Retail Property. The Waters Retail Buyer shall have no liability or responsibility of any nature, character or kind for any liability or other obligation of Waters Retail or any other party relating to the Waters Retail Property or the operation of Waters Retail's business.

  e.  The provision of this Order authorizing the Sale of the Waters Retail Property free and clear of liens, encumbrances and claims shall be self-executing, and neither the Debtor nor the Waters Retail Buyer nor any other party shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate and/or implement the provisions of this Order; provided, however, that this paragraph shall not excuse any party from performing any of its

respective obligations under the Waters Retail PSA. Without in any way limiting the foregoing, the Debtor and the Waters Retail Buyer are authorized and empowered to execute and file releases, termination statements, assignments, consents, or other instruments to effectuate and/or implement the provisions of this Order. Without limiting any other terms and provisions of this Order, upon the request of either the Debtor or the Waters Retail Buyer, the former holders of any liens, encumbrances and other claims held against the Waters Retail Property prior to Closing (as such liens, encumbrances and other claims were automatically, unconditionally and irrevocably released, discharged and terminated as to the Waters Retail Property upon the Closing Date by this Order and attached exclusively to the Waters Retail Proceeds from the Waters Retail Property) shall execute and deliver to the Debtor and the Waters Retail Buyer a written, notarized release of lien, claim or other encumbrance against the Waters Retail Property, in form and satisfaction to be determined in the commercially reasonable discretion of the Debtor and/or the Waters Retail Buyer (whomever the requesting party), as a condition to payment of any Allowed Claim held by such creditor. Any and all of such release documents may be recorded with any governmental agency by the Debtor or the Waters Retail Buyer to evidence the liens, claims, and encumbrances released thereby.

f. The Waters Retail Property is legally described herein on **Exhibit A** as to the real property as well as any other personal property, other property rights and all other property as defined and described in the Waters Retail PSA and/or Bid Procedures Motion.

g. Pursuant to the Waters Retail PSA Section 10.3 and Disclosure Statement Article III C, the Debtor or the Consolidated Liquidating Trustee, as the case may be, is

authorized to take any action without further hearing, notice and/or order to carry out the purposes of the Waters Retail PSA and the transactions contemplated therein (including but not limited to the execution of and delivery of further documents, instruments and/or Quit Claim Deed(s)).

6.      This Confirmation Order, the Waters Retail PSA, and all related agreements and documents necessary to implement the Plan shall be binding upon, and shall inure to the benefit of any, the Debtor and its estate, as applicable, its creditors, the Waters Retail Buyer, all third parties affected by this Confirmation Order (including but not limited to any third parties asserting liens, encumbrances, claims or other interests in or against the Waters Retail Property) and the respective successors and assigns of such parties.  This Confirmation Order also shall be binding upon any subsequently appointed trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors or any trustee, examiner or receiver.

7.      <u>Transfer Taxes: Recording and Filing Department</u>.

a.      Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including Waters Retail PSA and any other instrument executed in furtherance of the transactions contemplated by the Plan), shall not be taxed under any law imposing stamp, transfer or similar tax.

b.      The Court shall retain jurisdiction with respect to any disputes or controversies arising with respect to the above ordered paragraph.

c.      From and after the Effective Date, pursuant to Section 1146(a) of the Bankruptcy Code, all state and local government agencies, entities, or authorities are

jointly and severally restrained and enjoined from commencing or continuing any action to collect from the Debtor or the Waters Retail Property, any stamp, transfer or similar tax within the meaning of section 1146(a) of the Bankruptcy Code with respect to the transactions contemplated or described in the Plan.

d.      All applicable government entities shall record any recordable instrument or transfer with respect to the transfer of any asset pursuant to or in furtherance of the Plan, and any other related instruments contemplated under the Plan, specifically including, without limitation, a deed conveying ownership of the Waters Retail Property under the Waters Retail PSA to the Waters Retail Buyer herein and any releases of liens, encumbrances and claims to the Waters Retail Property, as applicable (collectively, the "Transfer Documents") without the payment of any state or local taxes to the fullest extent provided in section 1146(c) of the Bankruptcy Code.

e.      Each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instrument necessary, contemplated by the Plan and this Confirmation Order.

f.      All filing officers are directed to accept for recording or filing and to record or file the Transfer Documents immediately upon presentation thereof without payment of such taxes and without the presentation of any affidavits, instruments or returns otherwise required for recording, and the recording officer is directed to comply with the provisions of this Confirmation Order.

8.      Effects of Confirmation; Effectiveness; Successors and Assigns. On the Effective Date, the stay contemplated by Bankruptcy Rule 3020(e) is waived and lifted in all respects. Notwithstanding any otherwise applicable law but subject to the occurrence of the Effective

Date, upon entry of this Confirmation Order, the terms of the Plan (including the exhibits thereto and referenced herein, and all documents and agreements executed pursuant to the Plan) and the Confirmation Order shall be binding upon (a) the Debtor; (b) all holders of Claims against and Interest in the Debtor, whether or not impaired under the Plan, and whether or not, if impaired, such holder accepted the Plan; (c) any other party in interest; (d) any Person making an appearance in this Case; and (e) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

9.      <u>Classification and Treatment</u>. All Claims and Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved. The treatment of all Claims and Interests as provided in the Plan shall be, and hereby is, approved.

10.     <u>Administrative Expense Claims</u>. (Other than Professional Claims or the Claims on account of the DIP Loan). The holder of any Administrative Expense Claim, other than holders of Professional Claims or the Claim of the DIP Lender on account of the DIP Loan, must File with the Court, and serve on the Liquidating Trustee and her counsel, an application for payment of such Administrative Expense ("<u>Administrative Expense Application</u>") on or before the Administrative Expense Claim Bar Date, which is thirty (30) days after the Effective Date. An Administrative Expense Application must include at a minimum: (a) the name of the holder of the Administrative Expense Claim; (b) the amount of the Claim; and (c) the basis of the Claim (including applicable support documentation). Failure to timely File and serve the Administrative Expense Application shall result in the Administrative Expense Claim being forever barred and discharged. A timely filed and served Administrative Expense Claim shall become an Allowed

Administrative Expense Claim if no objection is filed within thirty (30) days after its filing and service ("Administrative Expense Objection Deadline"). If an objection is filed to an Administrative Expense Application by the Administrative Expense Objection Deadline, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Order of the Court.

11.     Professional Claims. On or prior to the Administrative Expense Claim Bar Date, each Professional who holds, or asserts a Professional Claim shall file with the Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections, if any, to Professional final fee applications must be filed and served on the Consolidated Liquidating Trustee and the Professional to whose application the objections are addressed no later than twenty-four (24) days after the filing of the relevant final fee application. The Consolidated Liquidating Trustee shall pay any outstanding amounts owed to a Professional within ten (10) days after entry of a Final Order with respect to such Professional's final fee application.

12.     Enforceability of the Plan. Pursuant to Sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable notwithstanding any otherwise applicable non-bankruptcy law. The modifications are enforceable and do not constitute material modifications that might otherwise require re-solicitation.

13.     Authorization to Implement the Plan. Upon entry of this Confirmation Order, and subject to the occurrence of the Effective Date, the Debtor and the Consolidated Liquidating Trustee are authorized to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise

make effective all documents arising in connection therewith, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Court such that no further approval, act, or action need to be taken under any applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtor or the Consolidated Liquidating Trustee to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or the Confirmation Order.

14. <u>Payment of Fees and Expenses of the Consolidated Liquidating Trustee</u>. The Consolidated Liquidating Trustee may employ on behalf of herself, the Liquidating Debtor, and the Liquidating Estate, with Court order, professional persons, as such term is used in the Bankruptcy Code, to assist the Consolidated Liquidating Trustee to carry out the duties under the Plan. The Consolidated Liquidating Trustee and her professionals shall be compensated at their respective standard hourly rates or such other fee structure as may be agreed to by the Consolidated Liquidating Trustee (and as limited in the Consolidated Liquidating Trust Agreement), for time spent administering and implementing the Plan and the resolution of objections to Claims, if any are asserted, with further motion or application with approval of employment by the Court. The Consolidated Liquidating Trustee shall be required to seek approval of any professionals from the Bankruptcy Court; however, such professionals shall not be required to file fee applications, and in lieu thereof, shall file quarterly statements containing the amount of fees and expenses to be paid. Compensation to the Consolidated Liquidating Trustee and her professionals, shall be made from the remaining assets of the Liquidating Debtor without necessity, motion, or application to the Court or order from the Court. The form of the

Consolidated Liquidating Trust Agreement filed on October 9, 2020 [Docket No. 149] is hereby approved and the Debtor is authorized to sign such agreement and the addendum to such agreement.

15. <u>Distributions Under the Plan</u>. The Consolidated Liquidating Trustee is approved as the disbursing agent and shall have all powers, rights, duties, and protections afforded to the Consolidated Liquidating Trustee to make Distributions under the provisions of the Plan. Pursuant to the terms and provisions of the Plan, the Consolidated Liquidating Trustee shall make the Distributions specified under the Plan.

16. <u>Resolution of Claims</u>. Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. All objections to Claims shall be filed with the Court by the Claims Objection Deadline, which is one hundred-twenty (120) days from the Effective Date unless further extended by order of the Court, and a copy of the objection will be served upon the holder of the Claim to which such objection pertains and the United States Trustee. Nothing in the Plan or this Confirmation Order is intended to affect or modify the right of any party-in-interest to object to a Claim or Interest under Section 502(a) of the Bankruptcy Code.

17. <u>Claims of Taxing Authorities</u>. Tax claims shall be treated as Priority tax claims under the Plan.

18. <u>Tax Claim Treatment</u>. Notwithstanding any provisions of any final orders pertaining to post-petition financing, use of cash collateral or plan confirmation, or any agreements validated by any such orders, any liens currently held by any Tax Authorities shall neither be primed by nor subordinated to any liens granted or acknowledged thereby or pursuant to this order. To the extent any such claims are allowed, the Debtor shall pay the Tax

Authorities' pre-petition claims with interest from the petition date through the Effective Date and from the Effective Date through the date of payment in full at the applicable state statutory rate of 1% per month pursuant to 11 U.S.C. §§ 506(b), 511, and 1129. These Claims shall be paid upon the Closing of the Sale of the Debtor's assets. In the event of a claim objection, the Tax Authorities' claims shall be entitled to interest that accrues while the claim objection is pending. The Tax Authorities shall receive payment of their administrative expense claims for year 2020 ad valorem property taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an administrative expense claim and request for payment as a condition of allowance pursuant to 11 U.S.C. Section 503(b)(1)(D). The Tax Authorities shall retain their prepetition and postpetition liens until all taxes and related interest, penalties, and fees (if any) have been paid in full. In the event of a default under the plan, the Tax Authorities shall send notice of default to counsel for the Debtor/Reorganized Debtor via facsimile or electronic mail, and the Debtor shall have 15 days from the date of such notice to cure the default. In the event of failure to cure the default timely, the Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable non-bankruptcy law without further recourse to the Bankruptcy Court. At the closing of the sale of the Debtor's property, the Tax Authorities shall receive payment in full from the sale proceeds, with the liens that secure all amounts that are not paid at the sale closing remaining attached to the property sold.

19. <u>No Effect on Governmental Regulatory Authority</u>. Notwithstanding anything in the Plan or this Order to the contrary, nothing in the Plan or this Order or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("<u>Governmental Unit</u>") that is not a "claim" as defined in 11 U.S.C. §

101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtor or Reorganized Debtor. Nor shall anything in the Plan or this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Further, nothing in the Plan or this Order or related documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in the Plan or this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in the Plan or this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in the Plan or this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan or this Order or to adjudicate any defense asserted under the Plan or this Order.

20. _Rejection of Executory Contracts_. Pursuant to Section 7.1 of the Plan, on the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party that had not otherwise been assumed or rejected pursuant to a Final Order of the Court shall be deemed rejected as of the Petition Date.

21. _Rejection Damage Claims_. Pursuant to Section 7.3 and 7.5 of the Plan, if the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Rejection Claim, any such Rejection Claim shall be forever barred and shall not be enforceable

against the Debtor or its Estate (or the Liquidating Debtor or the Consolidated Liquidating Debtor's Estate) unless a proof of Rejection Claim is Filed by the Rejection Damages Bar Date, which shall be thirty (30) days after the Confirmation Order or such later date specified by the Bankruptcy Court in the Confirmation Order or in an Order approving such rejection. The Consolidated Liquidating Trustee shall file any objection to a Rejection Claim on or before the Claims Objection Deadline.

22.     <u>Payment of U.S. Trustee Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid on a quarterly basis until the Cases are closed, converted, or dismissed. The Debtor shall be liable for the payment of all quarterly fees due and payable pursuant to 28 U.S.C. §1930(a)(6) prior to the Effective Date. The Debtor and Liquidating Debtor shall be jointly and severally liable for the payment of all quarterly fees due pursuant to 28 U.S.C. § 1930 after the Effective Date, and for any unpaid quarterly fees incurred by the Debtor prior to the Effective Date. The Liquidating Debtor through the Consolidated Liquidating Trustee shall provide the United States Trustee with post-confirmation quarterly reports that shall include all disbursements for that quarter.

23.     <u>Retention of Causes of Action</u>.

a.     Except as otherwise provided in the Plan and this Confirmation Order, all Causes of Action shall be retained for the benefit of the Debtor and its Estate as set forth in the Plan, the Disclosure Statement (including all appendices thereto), and modifications. These Causes of Action include, without limitation, all claims and Causes of Action listed in, referenced in, or attached as an appendix to the Disclosure Statement or the Schedules. The Consolidated Liquidating Trustee is hereby designated as the Liquidating Debtor's Estate representative for purposes of prosecuting and enforcing all

Causes of Action, and the Consolidated Liquidating Trustee has standing to bring all Causes of Action. Except as otherwise provided in the Plan and this Confirmation Order, the Consolidated Liquidating Trustee's right to commence, pursue, prosecute, enforce, or settle such Causes of Action on behalf of the Liquidating Debtor shall be, and hereby is, preserved.

b. No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor, or the Consolidated Liquidating Trustee on behalf of the Liquidating Debtor, will not pursue all available Causes of Action. The Debtor and the Consolidated Liquidating Trustee on behalf of the Liquidating Debtor's Estate expressly reserves, specifically and unequivocally, all rights to prosecute and enforce and all Causes of Action against any Person or Entity, except as otherwise specifically and expressly provided in the Plan. Unless any Causes of Action against a Person or Entity is specifically and expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an Order, the Debtor and the Consolidated Liquidating Trustee on behalf of the Liquidating Debtor expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), standing, or laches, shall apply to such Cause of Action upon or after the confirmation or consummation of the Plan by reason of entry of the Confirmation Order.

24. <u>Releases, Injunction and Exculpations</u>. The discharge, injunction and exculpation provisions set forth in Article XII of the Plan shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.

25. Nothing in the Confirmation Order or the Plan releases, discharges, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("<u>Governmental Unit</u>") that is not a "claim" as defined in 11 U.S.C. § 101(5), (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date, or (iii) any exercise of a Governmental Unit's police or regulatory powers.

26. <u>Retention of Jurisdiction</u>. Pursuant to Section 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Cases or the Plan; (c) that relates to the matters set forth in Article 9 of the Plan.

27. <u>Specific Jurisdiction</u>. The Court specifically retains jurisdiction pursuant to and for purposes set forth in Sections 105 and 1127 of the Bankruptcy Code and the Plan, including without limitation, to determine whether or not any claim or right has been affected by the Plan or this Confirmation Order, and for such other purposes as may be necessary or useful to aid in the enforcement or implementation of the Plan or this Confirmation Order.

28. <u>Automatic Stay Under Section 362(a)</u>. The stay in effect in the Case pursuant to Section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further effect, subject to the injunction set forth in the Confirmation Order, Article 12 of the Plan and/or Sections 524 and 1411 of the Bankruptcy Code. Notwithstanding the dissolving of the automatic stay and the imposition of the injunction referenced above, the Bistum's Motion for Relief from Stay [Docket No. 110] (the "<u>Motion for</u>

Relief"), a hearing on which has been continued by agreement, shall be treated as a motion for relief from stay until the Effective Date, and thereafter will be treated by the Court as seeking relief from the injunction set forth in the Confirmation Order to determine the Bistum's Claims against the Debtors in the pending state court litigation referenced in the Motion for Relief, to be determined under the standards applied by this Court in adjudicating relief from the automatic stay.

29. <u>Designation of Consolidated Liquidating Trustee</u>. As of the Effective Date, Allison Byman is hereby designated as the Consolidated Liquidating Trustee. The Consolidated Liquidating Trustee is hereby vested with full power and authority on behalf of the Debtor to take any and all actions deemed necessary or appropriate to carry out the duties contemplated under the Plan and all other provisions of the Plan. The Consolidated Liquidating Trustee shall have full and unqualified authority to delegate any or all of these powers to any of her authorized agents.

30. <u>Notice of Confirmation Order</u>. The Debtor shall serve a copy of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors, the United States Trustee, and entities that requested notice in these Cases, by first-class mail, postage prepaid.

31. <u>Notice of Effective Date</u>. Within one (1) business day after the occurrence of the Effective Date as set forth in the Plan, the Debtor shall File a notice of the occurrence of the Effective Date and serve a copy of same on (a) all creditors, (b) the United States Trustee, and (c) entities that have requested notice in these Cases. "Substantial Consummation" of the Plan, as defined in Bankruptcy Code Section 1101(2), shall be deemed to occur on the Effective Date.

32.     <u>Reference to Plan Provisions</u>. The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order. If any inconsistencies occur between the Plan and this Order, this Order shall govern.

33.     <u>Calculation of Time Period</u>. All time periods set forth in this Confirmation Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent Order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of such order; nor shall such reversal, modification, or vacatur of the Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

35.     <u>Waiver of the Stay</u>. The requirements under Bankruptcy Code Rule 3020(e) that an order confirming a plan is stayed until expiration of 14 days after entry of the order are hereby

waived.  The Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy

Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.4

### ### END OF ORDER ###

Prepared by:

**CROWE & DUNLEVY, P.C.**

By:  */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Seth A. Sloan
State Bar No.24098437
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile:  214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: christina.stephenson@crowedunlevy.com
Email: seth.sloan@crowedunlevy.com

**COUNSEL FOR DEBTOR**

---

4 Because this Order is entered solely to correct a scrivener's error any appellate or reconsideration periods are not
hereby extended or resuscitated.
**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FIRST**
**AMENDED PLAN OF LIQUIDATION OF WATERS RETAIL TPA, LLC - Page 33 of 36**

## EXHIBIT A

## LEGAL DESCRIPTION

The land referred to herein below is situated in the County of Hillsborough, State of Florida, and is described as follows:

**TRACT I:**

**Parcel 1:**

The East 780 feet of the North 3/4 of the NE 1/4 of the NE 1/4. Less the North 60 feet and LESS the East 30 feet thereof, of Section 28, Township 28 South, Range 18 East, lying and being in Hillsborough County, Florida.

**Parcel 2:**

A tract of land lying in the North 3/4 of the Northeast 1/4 of the Northeast 1/4 of Section 28, Township 28 South, Range 18 East, Hillsborough County, Florida, more particularly described as follows:

Begin at the Northeast corner of the Northeast 1/4 of the Northeast 1/4 of stated Section 28; thence West along the North boundary of stated Section 28, a distance of 780.00 feet; thence South along a line 780.00 feet West of and parallel to the East boundary of the Northeast 1/4 of the Northeast 1/4 of stated Section 28, a distance of 681.37 feet for a Point of Beginning; thence continue South along a line 780.0 feet West of and parallel to the East boundary of the Northeast 1/4 of the Northeast 1/4 of stated Section 28, a distance of 200.0 feet; thence West along a line of 111.0 feet North of and parallel to the South boundary of the North 3/4 of the Northeast 1/4 of the Northeast 1/4 of stated Section 28, a distance of 484.50 feet to a point on the East right of way boundary of Dale Mabry Highway (State Road 597); thence North along the East right of way boundary Dale Mabry Highway a distance of 200.0 feet; thence East along a line 681.37 feet South of and parallel to the North boundary of the Northeast 1/4 of the Northeast 1/4 of stated Section 28, a distance of 483.67 feet to the Point of Beginning.
LESS AND EXCEPT the West 255.00 feet thereof.

**Parcel 2A – (Easement):**

Easement as set forth in that certain Access Easement recorded in Official Records Book 11301, Page 250, of the Public Records of Hillsborough County, Florida.

**Parcel 3A – (Easement):**

A non-exclusive easement for ingress, egress, and access, as described in Easement Agreement given by Honeywell International Inc., to Waters Retail TPA, LLC, dated December 24, 2014, and recorded January 14, 2015, in Official Records Book 23031, at page 1623, of the public records of Hillsborough County, Florida, over and across the real property described as follows:

The South 66.0 feet of the West 150 feet of the East 930.0 feet of the South 175 feet of the North 515.0 feet of the Northeast 1/4 of the Northeast 1/4 of Section 28, Township 28 South, Range 18 East, Hillsborough County, Florida.

**TRACT II:**

**Parcel I:**

A tract of land lying in the Northeast ¼ of the Northeast ¼ of Section 28, Township 28 South, Range 18 East, Hillsborough County, Florida, more particularly described as follows:

Begin at the Northeast corner of said Section 28; thence run West along the North boundary of said Section 28 a distance of 930.0 feet; thence South along a line 930.0 feet West of and parallel to the East boundary of said Section 28 a distance of 260.0 feet for a point of beginning. Thence continue South along a line 930.0 feet West of and parallel to the East boundary of said Section 28 a distance of 255.0 feet; thence East along a line 515.0 feet South of and parallel to the North boundary of said Section 28 a distance of 150.0 feet; thence South along a line 780.0 feet West of and parallel to the East boundary of said Section 28 a distance of 105.0 feet; thence West along a line 620.0 feet South of and parallel to the North boundary of said Section 28 a distance of 483.41 feet to a point on the East right of way boundary of Dale Mabry Highway (S R. 597); thence North along said East right of way boundary of Dale Mabry Highway a distance of 185.0 feet; thence East along a line 435.0 feet South of and parallel to the North boundary of said Section 28 a distance of 250.0 feet; thence North along a line 250.0 feet East of and parallel to the East right of way boundary of Dale Mabry Highway a distance of 175.0 feet; thence East along a line 260.0 feet South of and parallel to the North boundary of said Section 28 a distance of 83.50 feet to the point of beginning.

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FIRST AMENDED PLAN OF LIQUIDATION OF WATERS RETAIL TPA, LLC - Page 35 of 36**

**Parcel II**

a) Together with a 30.0 foot ingress and egress easement over and across the following described parcel of land:

Begin at the Northeast corner of the Northeast ¼ of the Northeast ¼ of Section 28, Township 28 South, Range 18 East, Hillsborough County, Florida; thence South a distance of 60.0 feet to a point on the South right of way boundary of Waters Avenue; thence North 89°45'57" West along said South boundary a distance of 1079.13 feet; thence South 00°18'07" West a distance of 200.0 feet for a point of beginning of 30.0 foot ingress and egress easement, thence South 89°45'57" East a distance of 68.0 feet; thence South 00°18'07" West a distance of 30.0 feet, thence North 89°45'57" West a distance of 68.0 feet; thence North 00°18'07" East a distance of 30.0 feet to the point of beginning.

b) Together with an easement for ingress and egress over and across the West 30 feet of the following described parcel of land:

Begin at a point 930.0 feet West and 60.0 feet South of the Northeast corner of the Northeast ¼ of the Northeast ¼ of said Section 28, said point being on the South right of way boundary of Waters Avenue as the same existed on September 3, 1975; thence South a distance of 200.0 feet along a line 930.0 feet West of and parallel to the East boundary of Section 28; thence North 89°45'57" West a distance of 151.50 feet along a line 260.0 feet South of and parallel to the North boundary of Section 28; thence North 00°18'07" East a distance of 200.0 feet along a line parallel to the centerline of right of way of Dale Mabry Highway (said line being the same as described in deed recorded in Deed Book 1951, Page 371); thence South 89°45'57" East a distance of 149.13 feet along the South right of way boundary of Waters Avenue to the point of beginning.